## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| NORAH FLAHERTY, individually and on behalf of all others similarly situated, | |
| Plaintiff, | Case No. |
| v. | **CLASS ACTION COMPLAINT** |
| JOHNSON & JOHNSON CONSUMER, INC. | **JURY DEMANDED** |
| Defendant. | |

Now comes the Plaintiff, NORAH FLAHERTY ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, and for her Class Action Complaint against the Defendant, JOHNSON & JOHNSON CONSUMER, INC., ("Defendant"), Plaintiff alleges and states as follows:

### PRELIMINARY STATEMENTS

1.     This is an action for damages, injunctive relief, and any other available legal or equitable remedies, for violations of Illinois Consumer Fraud and Deceptive Businesses Practices Act ("ILCFA"), 815 ILCS 505/1 *et seq*., common law fraud, unjust enrichment, and breach of warranty, resulting from the illegal actions of Defendant, in intentionally labeling its skincare products with false and misleading claims that they are oil-free, when Defendant's products contain numerous oils. Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest or costs, and is a class action in which members of the class are citizens of a State different from the Defendant.

3.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this claim occurred in this District, and Defendant does business in the Northern District of Illinois.

## PARTIES

4.     Plaintiff is an individual who was at all relevant times residing in Chicago, Illinois.

5.     On information and belief, Defendant is a Delaware corporation, whose principal place of business is located in New Brunswick, New Jersey.

6.     At all times relevant hereto, Defendant was engaged in the manufacturing, marketing, and sale of cosmetics.

## FACTS COMMON TO ALL COUNTS

7.     Defendant manufactures, advertises, markets, sells, and distributes skincare products throughout Illinois and the United States under the brand names "Neutrogena" and "Clean & Clear".

8.     During the Class Period Defendant sold at least the following products (the "Products") advertised as oil-free when they in fact contained oils including but not limited to those listed below:

   a.   Neutrogena Clear Face Oil-Free: dimethicone, ethylhexyl stearate;

   b.   Hydro Boost Cleansing Gel and Oil Free Makeup Remover: tocopherol acetate;

c. Age Shield Face Oil-Free Lotion Sunscreen: octocrylene;

d. Pore Refining Face Toner with Witch Hazel, Oil-Free: PEG-40 hydrogenated castor oil;

e. Oil-Free Pink Grapefruit Acne Face Moisturizer: dicaprylyl ether, dimethicone, neopentyl glycol diisostearate;

f. Oil-Free Moisture Broad Spectrum SPF 35: octocrylene, dimethicone, diethylhexyl 2-6-naphthalate;

g. Oil-Free Moisture Combination Skin: cetyl ethylhexanoate, cetyl-ricinoleate, tocopherol;

h. Oil-Free Acne Stress Control Power Cream Wash: cetyl lactate;

i. Oil-Free Acne Stress Control Triple-Action Toner: cetyl lactate;

j. Oil-Free Moisture Broad Spectrum SPF 15: octocrylene, dimethicone, dimethyl heptenal, octyldodecyl neopentanoate;

k. Oil-Free Acne Wash Cream Cleanser: cetyl lactate;

l. Body Clear Oil-Free Body Scrub: jojoba esters;

m. Oil-Free Acne Wash Redness Soothing Facial Cleanser: tocopherol acetate;

n. Sport Face Oil-Free Lotion Sunscreen Broad Spectrum SPF 70: octocrylene, diethylhexyl 2-6-naphthalate;

o. Oil-Free Acne Stress Control Power-Clear Scrub: cetyl lactate;

p. Rapid Clear Acne Defense Oil-Free Face Lotion and Moisturizer: dimethicone, tocopherol acetate, capryloyl glycine;

q. Oil-Free Acne Wash Pink Grapefruit Cream Cleanser: cetyl lactate;

r. Oil-Free Acne Wash Redness Soothing Cream Cleanser: cetyl lactate;

3

s.   Oil-Free Acne Stress Control Night Cleansing Pads: cetyl lactate;

t.   Oil-Free Acne Correct and Cover Pink Grapefruit Moisturize: dimethicone, dicaprylyl ether;

u.   Skin Clearing Liquid Makeup: tocopherol acetate, retinyl palmitate, cetyl lactate;

v.   Clean & Clear Dual Action Moisturizer: dicaprylyl ether, dimethicone, neopentyl glycol diisostearate, neopentyl glycol diethylhexanoate;

w.   Lemon Zesty Scrub: tocopheryl acetate;

x.   Watermelon Gel Moisturizer: dimethicone;

y.   Morning Burst Facial Cleanser: tocopheryl acetate, retinyl palmitate;

z.   Watermelon Cleansing Wipes: cetyl ethylhexanoate;

aa. Lemon Cleansing Wipes: cetyl ethylhexanoate;

bb. Blackhead Eraser Scrub: jojoba esters;

cc. Night Relaxing Detox Clay Mask: Caprylic/capric triglyceride;

dd. Morning Burst Facial Scrub: tocopheryl acetate;

ee. Advantage Acne Spot Treatment: capryloyl glycine;

ff.  Morning Burst Hydrating Facial Cleanser: tocopheryl acetate;

gg. Morning Burst Hydrating Gel Moisturizer: dimethicone;

hh. Makeup Dissolving Facial Cleansing Wipes: cetyl ethylhexanoate;

ii.  Acne Triple Clear Cleansing Clay Mask: cetyl lactate;

jj.  Morning Burst Skin Brightening Facial Scrub: tocopheryl acetate;

kk. Morning Burst Detoxifying Facial Cleanser: tocopheryl acetate, retinyl palmitate;

4

ll.   Morning Burst Shine Control Facial Cleanser: tocopheryl acetate;

mm.   Night Relaxing All-in-One Cleansing Wipes: cetyl ethylthexanoate;

nn.   Advantage Acne Control Moisturizer: cetyl lactate, caprylic glycine.

9.   Plaintiff's most recent purchase of the Products was on or about November 3, 2020.

10.   All of the Products contain oils, but Defendant intentionally advertise and label the Products as oil-free.

11.   Persons, like Plaintiff herein, have an interest in purchasing products that do not contain false and misleading claims with regards to the qualities of the products.

12.   By making false and misleading claims about the qualities of the products, Defendant impaired Plaintiff's ability to choose the type and quality of products she chose to buy.

13.   Therefore, Plaintiff has been deprived of her legally protected interest to obtain true and accurate information about her consumer products as required by law.

14.   As a result, Plaintiff has been misled into purchasing products she would not have otherwise purchased.

15.   Oil is a term that describes a material that is both hydrophobic and lipophilic. Oil can also be classified by the polarity of the material. Oils can be wholly non-polar such as hydrocarbons, or polar such as fatty acids.  Oil comprises the following chemical functional groups:[1]

a. hydrocarbons (alkanes, alkenes) —such as squalane commonly sold as squalane oil;

b. triglycerides—such as glycerol tristearate also known as stearin;

c. esters—such as ester oil;

d. fatty acids—such as palmitic acid;

---

[1] Tony O'Lenick, Polar vs. Nonpolar oils, 2008.
https://www.cosmeticsandtoiletries.com/research/chemistry/17390254.html

5

e. certain silicones—such as alkyl dimethicone

f. fatty alcohols-sterols

16.     All of the above functional groups can be generally characterized by the same

physical properties commonly observed by laypersons including being less dense than water,

being more viscous than water, and feeling slick or slippery to the touch.

17.     The following is a structural diagram of dimethicone:



-silicone(siloxane)

18.     Dimethicone is defined as a polysiloxane. As shown in the diagram in paragraph

17 above, dimethicone contains the silicone (siloxane) functional group. It would be defined as a

polar oil. The compound has a density of 0.965 g/mL, compared to water's 1g/mL.

19.     The following is a structural diagram of a hydrogenated castor oil representative of

the general structure of PEG-40 hydrogenated castor oil:

-alkane

-fatty alcohol

-triglyceride

20.     PEG-40 hydrogenated castor oil is defined as a variety of molecules including an ethoxylated triglyceride. As shown in the diagram in paragraph 19 above, PEG-40 hydrogenated castor oil contains the alkane, triglyceride, and fatty alcohol functional groups. It would be defined as a non-polar oil. The compound has a density around of 0.955 g/mL, compared to water's 1g/mL.

21.     The following is a structural diagram of tocopherol acetate:



-alkane

-ester

22.     Tocopherol acetate is defined as an ester and is more commonly called vitamin E acetate. As shown in the diagram in paragraph 21 above, tocopherol acetate contains the alkane and ester functional groups. It would be defined as a polar oil. The compound has a density of 0.96 g/mL, compared to water's 1g/mL.

23.     The following is a structural diagram of ethylhexyl stearate:

-alkane

-ester

24.     Ethyhexyl stearate is defined as an ester. As shown in the diagram in paragraph 23 above, exthyhexyl stearate contains the ester and alkane functional groups. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL.

25.     The following is a structural diagram of octocrylene:



-alkane, alkene

-ester

26. Octocrylene is defined as an ester. As shown in the diagram in paragraph 25 above, octocrylene contains the ester and alkane functional groups. It would be defined as a polar oil. The compound has a density of 1.05 g/mL, compared to water's 1g/mL.

27. The following is a structural diagram of dicaprylyl ether:



-alkane

28. Dicaprylyl ether is defined as an ether. As shown in the diagram in paragraph 27 above, dicaprylyl ether contains the alkane functional group. It would be defined as a polar oil. The compound has a density of 0.805 g/mL, compared to water's 1g/mL.

29. The following is a structural diagram of neopentyl glycol diisostearate:



-alkane

-ester

30.     Neopentyl glycol diisostearate is defined as an ester. As shown in the diagram in paragraph 29 above, neopentyl glycol diisostearate contains the ester and alkane functional groups. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL.

31.     The following is a structural diagram of diethylhexyl 2-6 naphthalate:



-alkane

-ester

32.     Diethylhexyl 2-6 naphthalate is defined as an ester. As shown in the diagram in paragraph 31 above, diethylhexyl 2-6 naphthalate contains the ester and alkane functional groups. It would be defined as a polar oil.

33.     The following is a structural diagram of cetyl ethylhexanoate:



-alkane

-ester

34.     Cetyl ethylhexanoate is defined as an ester. As shown in the diagram in paragraph 33 above, cetyl ethylhexanoate contains the alkane and ester functional groups. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL.

35.     The following is a structural diagram of cetyl ricinoleate:



-alkane,alkene

-ester

11

-fatty alcohol

36.     Cetyl ricinoleate is defined as an ester. As shown in the diagram in paragraph 35 above, cetyl ricinoleate contains the alkane, alkene, ester, and fatty alcohol functional groups. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL.

37.     The following is a structural diagram of tocopherol:

-alkane

38.     Tocopherol is commonly known as vitamin E. As shown in the diagram in paragraph 37 above, tocopherol contains the alkane functional group. It would be defined as a polar oil. The compound has a density of 0.950 g/mL, compared to water's 1g/mL.

39.     The following is a structural diagram of cetyl lactate:



-alkane

12

-ester

40.     Cetyl lactate is defined as an ester. As shown in the diagram in paragraph 39 above, cetyl lactate contains the ester and alkane functional groups. It would be defined as a polar oil. The compound has a density of 1.01 g/mL, compared to water's 1g/mL.

41.     The following is a structural diagram of dimethyl heptenal:



-alkane, alkene

42.     Dimethyl heptenal is defined as an aldehyde. As shown in the diagram in paragraph 41 above, dimethyl heptenal contains the alkane and alkene functional groups. It would be defined as a non-polar oil. The compound has a density of 0.88 g/mL, compared to water's 1g/mL.

43.     The following is a structural diagram of octyldodecyl neopentanoate:



-alkane

-ester

44.     Octyldodecyl neopentanoate is defined as an ester. As shown in the diagram in paragraph 43 above, octyldodecyl neopentanoate contains the ester and alkane functional groups. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL.

45.     Jojoba esters are defined as a complex mixture of molecules resulting from the transesterification of jojoba oil. As a result there are many chemicals that comprise the mixture known as jojoba ester. These molecules include fatty acids and fatty alcohols joined by ester bonds. Jojoba esters would be defined as polar oils. The mixture has a density of 0.868 g/mL, compared to water's 1g/mL.

46.     The following is a structural diagram of capryloyl glycine:



-alkane

47.     Capryloyl glycine is defined as an amino acid. As shown in the diagram in paragraph 46 above, capryloyl glycine contains the alkane functional group. It would be defined as a polar oil. The compound has a density of 0.95 g/mL, compared to water's 1g/mL.

48.     The following is a structural diagram of retinyl palmitate:

-alkane

-ester

49.     Retinyl palmitate is defined as an ester. As shown in the diagram in paragraph 48 above, retinyl palmitate contains the alkane, alkene and ester functional groups. It would be defined as a polar oil. The compound has a density of 0.9 g/mL, compared to water's 1g/mL.

50.     The following is a structural diagram of caprylic triglyceride:



-triglyceride

-alkane

51.     Caprylic/capric triglycerides are defined as triglycerides. As shown in the diagram in paragraph 50 above, caprylic/capric triglycerides contain triglyceride and alkane functional groups. They would be defined as polar oils. The compounds have a density of 0.910 g/mL compared to water's 1g/mL.

52.     The following is a structural diagram of neopentyl glycol diethylhexanoate:



-alkane

-ester

53.     Neopentyl glycol diethylhexanoate is defined as an ester. As shown in the diagram in paragraph 52 above, neopentyl glycol diethylhexanoate contain the alkane and ester functional groups. They would be defined as polar oils. The compounds have a density of 0.9 g/mL compared to water's 1g/mL

16

54.     Plaintiff purchased Defendant's products because Defendant's packaging claims that their products are oil-free.

55.     Plaintiff would not have been able to understand that the Products contained oils without an advanced understanding of chemistry.

56.     Furthermore, due to Defendant's intentional, deceitful practice of falsely labeling the Products as oil-fee, Plaintiff could not have known that the Products contained oils.

57.     Plaintiff was unaware that the Products contained oils when she purchased them.

58.     Plaintiff and the Class were deceived into paying money for products they did not want because the Products were labeled as oil free.

59.     Worse than the lost money, Plaintiff, the Class, and Sub-Class were deprived of their protected interest to choose the type and quality of products they use on their bodies.

60.     Defendant, and not Plaintiff, the Class, or Sub-Class, knew or should have known that the Products' express labeling stating "Oil-Free" was false, deceptive, and misleading, and that Plaintiff, the Class, and Sub-Class members would not be able to tell the Products' contained oils unless Defendant expressly told them.

61.     Defendant employs professional chemists to create the chemical formulas of Defendant's products. Therefore, Defendant through its employees knew or should have known that the Products contained oils and that by labeling the Products as oil-free they were deceiving consumers.

62.     On information and belief, Defendants through their employees did know that the Products contained oils but chose to include "oil-free" labeling because they did not believe their customers were well educated enough to know the difference.

63. As a result of Defendant's acts and omissions outlined above, Plaintiff has suffered concrete and particularized injuries and harm, which include, but are not limited to, the following:

      a.    Lost money;

      b.    Wasting Plaintiff's time; and

      c.    Stress, aggravation, frustration, loss of trust, loss of serenity, and loss of confidence in product labeling.

## CLASS ALLEGATIONS

64. Plaintiff brings this action on behalf of herself and all others similarly situated, as a member of the proposed class (the "Class"), defined as follows:

> All persons within the United States who purchased the Products within four years prior to the filing of the Complaint through the date of class certification.

65. Plaintiff also brings this action on behalf of herself and all others similarly situated, as a member of the proposed sub-class (the "Sub-Class"), defined as follows:

> All persons within the State of Illinois who purchased the Products within ten years prior to the filing of the Complaint through the date of class certification.

66. Defendants, their employees and agents are excluded from the Class and Sub-Class. Plaintiff does not know the number of members in the Class and Sub-Class, but believes the members number in the thousands, if not more. Thus, this matter should be certified as a Class Action to assist in the expeditious litigation of the matter.

67. The Class and Sub-Class are so numerous that the individual joinder of all of their members is impractical. While the exact number and identities of their members are unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff is informed and believes and thereon alleges that the Class and Sub-Class include thousands, if not

millions of members. Plaintiff alleges that the class members may be ascertained by the records maintained by Defendant and its retailers.

68.     This suit is properly maintainable as a class action pursuant to Fed. R. Civ. P. 23(a) because the Class and Sub-Class are so numerous that joinder of their members is impractical and the disposition of their claims in the Class Action will provide substantial benefits both to the parties and the Court.

69.     There are questions of law and fact common to the Class and Sub-Class affecting the parties to be represented. The questions of law and fact common to the Class and Sub-Class predominate over questions which may affect individual Class and Sub-Class members and include, but are not necessarily limited to, the following:

a.     Whether Defendant disseminated false and misleading information by claiming the Products was oil-free when they contained oils;

b.     Whether the Class and Sub-Class members were informed that the products contained oils;

c.     Whether the Products contained oils;

d.     Whether Defendant's conduct was unfair and deceptive;

e.     Whether Defendant unjustly enriched itself as a result of the unlawful conduct alleged above;

f.     Whether Defendant breached express warranties to Plaintiff, and the Class and Sub-Class members;

g.     Whether there should be a tolling of the statute of limitations; and

h.     Whether the Class and Sub-Class members are entitled to restitution, actual damages, punitive damages, and attorneys' fees and costs.

70.     As a resident of the United States and the State of Illinois who purchased the Products, Plaintiff is asserting claims that are typical of the Class and Sub-Class.

71.     Plaintiff has no interests adverse or antagonistic to the interests of the other members of the Class and Sub-Class.

72.     Plaintiff will fairly and adequately protect the interests of the members of the Class and Sub-Class. Plaintiff has retained attorneys experienced in the prosecution of class actions.

73.     A class action is superior to other available methods of fair and efficient adjudication of this controversy, since individual litigation of the claims of all Class and Sub-Class members is impracticable. Even if every Class and Sub-Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous issues would proceed. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments and would magnify the delay and expense to all parties, and to the court system, resulting from multiple trials of the same complex factual issues. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and of the court system and protects the rights of each class member. Class treatment will also permit the adjudication of relatively small claims by many Class and Sub-Class members who could not otherwise afford to seek legal redress for the wrongs complained of herein.

74.     The prosecution of separate actions by individual members of the Class and Sub-Class would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other Class and Sub-Class members not parties to such adjudications or that would substantially impair or impede the ability of such non-party Class and Sub-Class members to protect their interests.

75. Plaintiff's claims and injuries are identical to the claims and injuries of all Class and Sub-Class members, because all claims and injuries of all Class and Sub-Class members are based on the same false labeling and same legal theories. All allegations arise from the identical, false, affirmative written statements made by Defendant when it claimed the Products are oil-free.

76. Defendant has acted or refused to act in respect generally applicable to the Class and Sub-Class thereby making appropriate final and injunctive relief with regard to the members of the Class and Sub-Class as a whole.

77. The size and definition of the Class and Sub-Class can be identified through records held by retailers carrying and reselling the Products, and by Defendant's own records.

## COUNT I
## VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/1, *et seq.*

78. Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

79. Plaintiff is a "person" as defined in 815 ILCS 505/1(c), as she is a natural person.

80. Defendant is a "person" as defined in 815 ILCS 505/1(c), as it is a company and a business entity and/or association.

81. 815 ILCS 505/2 states:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

82.     Through its representation that the Products were oil-free, Defendant made false promises, misrepresentations, concealments, suppressions, and omissions of material facts, with the intent that Plaintiff rely upon said false promises, misrepresentations, concealments, suppressions, and omissions of material facts.

83.     815 ILCS 505/10a states:

(a) Any person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person. The court, in its discretion may award actual economic damages or any other relief which the court deems proper...

(c) [T]he Court may grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party.

84.     In taking the actions and omissions set forth above, and making the false promises, misrepresentations, concealments, suppressions, and omissions of material facts set forth above, Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, including, but not limited to, 815 ILCS 505/2.

85.     Defendant failed to comply with the requirements of the ILCFA, including, but not limited to, 815 ILCS 505/2 as to the Class and Sub-Class members with respect to the above-alleged transactions

86.     By reason thereof, Plaintiff is entitled to a judgment against Defendant, declaring that Defendant's conduct violated 815 ILCS 505/2, enjoining Defendant from engaging in similar conduct in the future, and awarding actual damages, punitive damages, injunctive relief, costs, and attorneys' fees.

## COUNT II
## COMMON LAW FRAUD

87.     Plaintiff incorporates all of the allegations and statements made above as if fully

reiterated herein.

88.     Through its false statements on the Products' packaging, that the Products were oil-free, Defendant made false statements of material fact.

89.     At the time Defendant made its statements to Plaintiff that the Products were oil-free, it knew, or reasonably should have known, that the statements described above were false.

90.     At the time Defendant made the statements to Plaintiff, Defendant intended to induce Plaintiff to purchase the Products.

91.     Plaintiff relied upon the truth of the statements described above and purchased the Products, only to find that the Products did in fact contain oils.

92.     As a result of their reasonable reliance upon Defendant's false statements of material fact as set forth above, Plaintiff and other members of the Class and Sub-Class have suffered concrete and particularized injuries, harm, and damages which include, but are not limited to, the loss of money spent on products they did not want to buy, and stress, aggravation, frustration, inconvenience, emotional distress, mental anguish, and similar categories of damages.

## COUNT III
## UNJUST ENRICHMENT

93.     Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

94.     Plaintiff conferred monetary benefits to Defendant by purchasing the Products.

95.     Defendant has been unjustly enriched by retaining the revenues derived from Plaintiff's purchase of the Products based on the false statements that the Products are oil-free.

96.     Defendant's retention of the revenue it received from Plaintiff, and the Class and Sub-Class members, is unjust and inequitable because Defendant's false statements caused injuries to Plaintiff, and the Class and Sub-Class members, as they would not have purchased the Products

if they knew the Products contained oils.

97.　　Defendant's unjust retention of the benefits conferred on it by Plaintiff, and the Class and Sub-Class members, entitles Plaintiff, and the Class and Sub-Class members, to restitution of the money they paid to Defendant for the Products.

**COUNT IV**
**BREACH OF EXPRESS WARRANTIES**

98.　　Plaintiff incorporates all of the allegations and statements made above as if fully reiterated herein.

99.　　Defendant, as the manufacturer, designer, marketer, and seller of the Products, expressly warranted that the Products were oil-free on the front of the Products' packaging.

100.　　Defendant's express warranties that the Products were oil-free was part of the basis of the bargain between Plaintiff, and the Class and Sub-Class members, and Defendant.

101.　　However, the Products contain oils and do not conform to the express warranties Defendant made to Plaintiff, and the Class and Sub-Class members, that the Products are oil-free.

102.　　Furthermore, as described above, Defendant had actual knowledge of the above listed defects contained in the Products.

103.　　As a direct result of Defendant's breach of the express warranties it made to Plaintiff, and the Class and Sub-Class members, they have been injured, because they would not have purchased the Products on the same terms if they knew the Products contained oils contrary to what is listed on the packaging, and they did not gain the same benefits they bargained for when purchasing the Products.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment against Defendant as follows:

     a.      An order certifying the Class and the Sub-Class and appointing Plaintiff as Representative of the Class and the Sub-Class;

     b.      An order certifying the undersigned counsel as the Class and Sub-Class Counsel;

     c.      An order requiring Defendant, at its own cost, to notify all members of the Class and the Sub-Class of the unlawful, unfair, deceptive, and unconscionable conduct herein;

     d.      Judgment against Defendant in an amount to be determined at trial;

     e.      An order for injunctive relief prohibiting such conduct by Defendant in the future;

     f.      Judgment against Defendant for Plaintiff's attorneys' fees, court costs, and other litigation costs; and

     g.      Any other relief deemed just and proper by this Court.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues in this action so triable, except for any issues relating to the amount of attorneys' fees and costs to be awarded should Plaintiff prevail on any of her claims in this action.

RESPECFULLY SUBMITTED,

NORAH FLAHERTY

By:    /s/ Todd M. Friedman
       Attorney for Plaintiff
       Illinois Attorney No. 6276496
       Law Offices of Todd M. Friedman, P.C.
       21550 Oxnard Street, Suite 780
       Woodland Hills, California 91367
       Phone: (877) 619-8966
       Fax: (866) 633-0228
       tfriedman@toddflaw.com

       /s/ Steven G. Perry
       Attorney for Plaintiff
       Illinois Attorney No. 6330283
       Law Offices of Todd M. Friedman, P.C.
       111 W. Jackson Blvd., Suite 1700
       Chicago, IL 60604
       Phone: (224) 218-0875
       Fax: (866) 633-0228
       steven.perry@toddflaw.com

       /s/ David B. Levin
       Attorney for Plaintiff
       Illinois Attorney No. 6212141
       Law Offices of Todd M. Friedman, P.C.
       111 W. Jackson Blvd., Suite 1700
       Chicago, IL 60604
       Phone: (224) 218-0882
       Fax: (866) 633-0228
       dlevin@toddflaw.com